Michael R. Reese (California State Bar No. 206773)
*mreese@reesellp.com*
George V. Granade (California State Bar No. 316050)
*ggranade@reesellp.com*
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York  10025
Telephone: (212) 643-0500

Jason P. Sultzer, Esq.
*sultzerj@thesultzerlawgroup.com*
**THE SULTZER LAW GROUP P.C.**
85 Civic Center Plaza, Suite 104
Poughkeepsie, New York  12601
Telephone: (845) 483-7100

David R. Shoop (California State Bar No. 220576)
*dshoop@thesultzerlawgroup.com*
Thomas S. Alch (California State Bar No. 136860)
*talch@thesultzerlawgroup.com*
**THE SULTZER LAW GROUP P.C.**
250 S. Beverly Drive, Suite 330
Beverly Hills, California 90212
Telephone:  (866) 884-1717

*Counsel for Plaintiff Robert Fishel and the Proposed Class*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| ROBERT FISHEL, *on behalf of himself and all others similarly situated*,<br><br>            Plaintiff,<br><br>      v.<br><br>ACTIVISION PUBLISHING, INC.,<br><br>            Defendant. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

Plaintiff Robert Fishel ("Plaintiff"), individually and on behalf of all others similarly situated (the "Class," as defined below), brings this Class Action Complaint against Activision Publishing, Inc. ("Activision" or "Defendant"), and respectfully alleges as follows. Plaintiff bases the allegations herein on personal knowledge as to matters related to, and known to, him. As to all other matters, he bases his allegations on information and belief, through investigation of his counsel. Plaintiff believes substantial evidentiary support exists for his allegations, and he seeks a reasonable opportunity for discovery.

## JURISDICTION AND VENUE

### Jurisdiction

1.     Pursuant to Local Rule 8-1, Plaintiff states that this Court has original subject matter jurisdiction over this proposed class action pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of Title 28 of the *United States Code*), under 28 U.S.C. § 1332(d), which provides for the original jurisdiction of the federal district courts over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and [that] is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). Because Plaintiff is a citizen of Vermont and Defendant is a citizen of Delaware and California, at least one member of the plaintiff class is a citizen of a State different from Defendant. Furthermore, Plaintiff alleges the matter in controversy is well in excess of $5,000,000 in the aggregate, exclusive of interest and costs. Finally, Plaintiff alleges "the number of members of all proposed plaintiff classes in the aggregate" is greater than 100. *See* 28 U.S.C. § 1332(d)(5)(B).

2.     This Court has personal jurisdiction over Activision for reasons including but not limited to the following: Activision's headquarters are in California. As a result, Activision has continuous and systematic ties with California such that Activision is essentially at home here, meaning the Court has general *in*

1  *personam* jurisdiction over Activision.

2  **Venue**

3  3.  Venue is appropriate in this District pursuant to 28 U.S.C. § 1391

4  because Activision, the only defendant, resides within this District. 28 U.S.C. §

5  1391(b)(1), (d).

6  **NATURE OF THE ACTION**

7  4.  This is a proposed class action against Activision for misleading

8  consumers about whether, and how long, they could use the most substantial

9  components of the Apple TV, iOS, and console versions of Activision's flagship

10  video game "Guitar Hero Live." Herein, the Apple TV, iOS, and console versions

11  of Guitar Hero Live, collectively, are the "Products."

12  5.  Guitar Hero Live is a music video game in which players use a unique

13  guitar-shaped controller to "play" along with music tracks by contemporaneously

14  matching, on the controller, guitar fret patterns that the game scrolls on screen.

15  6.  Activision launched Guitar Hero Live for consoles in October 2015 and

16  for Apple TV and iOS devices in November 2015.

17  7.  The Products currently offer two gaming modes: (1) "Guitar Hero TV"

18  or "GHTV" mode, which, to be playable, requires the use of an online streaming

19  service that Activision provides, and (2) "Guitar Hero Live" or "GH Live" mode,

20  which allows players to use the game without the streaming service, to a limited

21  extent.

22  8.  The Guitar Hero TV streaming service currently offers 484 playable

23  tracks.

24  9.  The Guitar Hero Live mode offers 42 playable tracks.

25  10.  Thus, the Guitar Hero TV streaming service offers 92% of the playable

26  music tracks within the Guitar Hero Live Products.

27  11.  Activision can add to, and has added to, the number of tracks available

28  in the GHTV mode.

12.    Activision has not added to the tracks available in the GH Live mode.

13.    The Guitar Hero Live Products also allow players to purchase in-game currency called "Hero Cash" using real money.

14.    Players can use Hero Cash within the Guitar Hero Live Products to purchase "Premium" or "Exclusive" content, including some Premium and Exclusive content that is not available unless players purchase it with Hero Cash.

15.    In marketing and selling the Guitar Hero Live Products, Activision prominently and conspicuously represented that the Products were playable online indefinitely or, at least, for a reasonable length of time from the date of release. Activision represented that the Products included the GHTV mode, which it prominently and conspicuously stated is a "playable music video network." Activision also marketed the GHTV mode as, among other things, a "continuous broadcast of music videos," "running 24-hours a day, seven days a week." Activision's representations indicated that the Products would include the GHTV mode, and online playability, indefinitely or, at least, for a reasonable length of time from the date of release.

16.    On June 1, 2018, Activision announced that on December 1, 2018, Activision will terminate Guitar Hero TV, and the game's online servers will be permanently shut down.

17.    On June 1, 2018, Activision also announced that as of June 1, 2018, the iOS versions of the Product are no longer available for download, and if consumers update their iOS software, the software may no longer support the Guitar Hero Live Product.

18.    Thus, on and after December 1, 2018—only three years after Activision launched the Guitar Hero Live Products—Plaintiff and the Class members will no longer be able to use the Guitar Hero TV play mode (or play online) at all, and Activision will have eliminated 92% of the game's playable music tracks.

19.    Furthermore, as of June 1, 2018, if Class members who bought the iOS

version of the Product buy new iOS devices, those Class members will not be able to re-download the Product, or use the Product at all, on their new iOS devices.

20.     Upon information and belief, as of June 1, 2018, if Class members who bought the tvOS version of the Product by new Apple TVs, those Class members will not be able to re-download the Product, or use the Product at all, on their new Apple TVs.

21.     Furthermore, as of June 1, 2018, the iOS versions of the Product may be eliminated entirely from consumers' iOS devices if Apple upgrades the iOS operating system.

22.     Upon information and belief, as of June 1, 2018, the tvOS version of the Product may be eliminated entirely from consumers' Apple TV devices if Apple upgrades the tvOS operating system.

23.     Furthermore, Class members who purchased Hero Cash will lose access to that Hero Cash on and after December 1, 2018.

24.     And, Class members who purchased Premium or Exclusive content will lose access to that Premium or Exclusive content on and after December 1, 2018.

25.     As detailed below, Plaintiff brings this action on behalf of himself and the Class members, seeking an order enjoining Activision from shutting down the online servers that enable consumers to play Guitar Hero Live online in the Guitar Hero TV mode. Plaintiff prays only for injunctive relief consistent with the relief that the California Supreme Court discussed in *McGill v. Citibank, N.A.*, 393 P.3d 85 (Cal. 2017).

## **PARTIES**

### **Plaintiff Robert Fishel**

26.     Plaintiff Robert Fishel resides in Burlington, Vermont. Plaintiff has no intention of changing his residence.

### **Defendant Activision Publishing, Inc.**

27.     Defendant Activision Publishing, Inc., is a corporation organized under

1    the laws of the State of Delaware.

2    28.    Activision Publishing, Inc.'s principal executive office is located at

3    3100 Ocean Park Boulevard, Santa Monica, California 90405.

4    **ALLEGATIONS COMMON TO ALL CLAIMS**

5    29.    Guitar Hero Live is a music video game that requires players to use a

6    special guitar-shaped controller that is unique to, and only works with, Guitar Hero

7    Live.

8    30.    Below is an image of the Guitar Hero Live controller.



18    31.    Guitar Hero Live gameplay features guitar fret patterns that the game

19    scrolls on screen.

20    32.    The goal of the game is to use the guitar-shaped controller to match or

21    "play" the patterns in time with the music.

22    33.    The music that Guitar Hero Live makes available to "play" in such a

23    manner spans a diverse selection of music genres.

24    34.    The "Guitar Hero" music video game franchise has existed since 2005.

25    35.    On April 28, 2015, Fortune quoted Activision CEO Eric Hirshberg as

26    stating that the Guitar Hero franchise had 10 million fans on Facebook. John

27    Gaudiosi, *This $3 billion game franchise crashed and burned five years ago—but

28    now it's back. Here's why.*, FORTUNE.COM (Apr. 28, 2015),

1   http://fortune.com/2015/04/28/new-guitar-hero.

2   36.   In October 2015, Activision released the "Guitar Hero Live" game for

3   video game consoles including PlayStation 4, PlayStation 3, Xbox One, Xbox 360,

4   and Wii U.

5   37.   The Guitar Hero Live Products currently offer two gaming modes: (1)

6   "Guitar Hero TV" or "GHTV" mode, which, to be playable, requires the use of an

7   online streaming service that Activision provides, and (2) "Guitar Hero Live" or

8   "GH Live" mode, which allows players to use the game without the streaming

9   service, to a limited extent.

10   38.   Each video game console version of the Product includes both the GH

11   Live play mode and the GHTV play mode.

12   39.   The operating system for Apple Inc.'s television product, the Apple TV,

13   is called "tvOS."

14   40.   The operating system for Apple Inc.'s iPhone, iPad, and iPod Touch

15   products is called "iOS."

16   41.   In November 2015, Activision launched the "Guitar Hero Live" game

17   for Apple TV and iOS.

18   42.   The Apple TV version of Guitar Hero Live included the full game for

19   both tvOS and iOS (i.e., both the GH Live play mode and the GHTV play mode).

20   43.   The Apple TV version of the "Guitar Hero Live" game is only playable

21   with the guitar-shaped controller.

22   44.   The iOS version of Guitar Hero Live included the full game for iOS

23   only (i.e., both the GH Live play mode and the GHTV play mode).

24   45.   The iOS version of Guitar Hero Live is playable with the guitar-shaped

25   controller. It is also playable without the controller, by tapping the screen of the iOS

26   device (such as an iPad).

27   46.   Activision prominently and conspicuously represents to consumers in

28   the marketing for the Guitar Hero Live Products that the Products have online play

1  capabilities.

2      47.   For example, the boxes and marketing (including online box images)

3  for the Guitar Hero Live Products prominently and conspicuously make the

4  following representations (or substantially similar representations):

5      ONE GAME, TWO WAYS TO PLAY

6      GHLIVE

7      ROCK REAL CROWDS WITH REAL REACTIONS

8      GHTV

9      WORLD'S FIRST *PLAYABLE MUSIC VIDEO NETWORK*

10  Exhibit 1 (emphasis added) (annexed hereto).

11      48.   For another example, on its website for the Guitar Hero Live Products,

12  on June 14, 2017, Activision stated:

13      GHTV | THE WORLD'S FIRST PLAYABLE MUSIC VIDEO

14      NETWORK

15      ALL PLAYABLE. ALL THE TIME

16      GHTV is *a continuous broadcast of music videos* where you and your

17      guitar controller are the star. Hundreds of videos will be available at

18      launch spanning all different genres of music, *with new videos*

19      *continually added to the line-up. You'll be able to discover and play*

20      *new songs all the time.*

21  ACTIVISION PUBL'G, INC., *GHTV: The World's First Playable Music Vide Network*,

22  WWW.GUITARHERO.COM (June 14, 2017) (emphasis added),

23  https://www.guitarhero.com/game/ghtv    [https://web.archive.org/web/

24  20170614015159/https://www.guitarhero.com/game/ghtv].

25      49.   On the same page, Activision went on to state:

26      ROCK WITH FRIENDS

27      GHTV makes it more fun to play with your friends than ever. . . . Plus,

28      GHTV delivers exciting competition, no matter your skill level.

1         Compete in your living room **or online with people from all over the**

2         **world**, playing at similar progression levels and difficulty as you. . . .

3  *Id.* (emphasis added).

4         50.      Presumably pursuant to an agreement with Activision, retailer Best Buy

5  markets GHTV mode as "an **always-on music video network**, where you can play

6  along in real time, discover new music, and challenge friends around the world."

7  *Guitar Hero Live Video Games*, WWW.BESTBUY.COM (2018) (emphasis added),

8  https://www.bestbuy.com/site/franchises/guitar-hero/pcmcat376300050004.c?id=

9  pcmcat376300050004.

10        51.      On the same webpage, Best Buy states:

11        GHTV is **a 24-hour, always-on, playable music video network** where

12        you and your guitar are the stars. With over 150 videos available from

13        the start, the feed will be continuously updated with hits from yesterday

14        and today.

15        *   *   *   *   *

16        GHTV doubles as a live competition between friends and music fans

17        all over the world.

18 *Id.* (emphasis added) (scroll down and click "GHTV" tab in central box).

19        52.      Activision's website for the Guitar Hero Live Products states, in a set

20 of frequently asked questions:

21        *WHAT IS GHTV?*

22        GHTV is **a continuous broadcast of music videos** where you and your

23        guitar controller are the star. Hundreds of videos are available now

24        spanning all different genres of music, **with new videos continually**

25        **added to the line-up. You're able to discover and play new songs all**

26        **the time.**

27 ACTIVISION PUBL'G, INC., *FAQs*, WWW.GUITARHERO.COM (2018) (emphasis added),

28 https://www.guitarhero.com/faq.

53.     Activision's website for Guitar Hero Live further states:

*HOW MANY CHANNELS ARE AVAILABLE ON GHTV?*

GHTV currently has two channels of music **running 24-hours a day, seven days a week**. You can bounce between channels based on what sort of musical genres appeal to you and check out different sorts of videos. You can also play along to unlock premium shows like new videos, live concert footage and other prizes.

*Id.* (emphasis added)

54.     Activision also represents on the Guitar Hero Live Product website as follows:

*HOW MANY SONGS ARE AVAILABLE IN GUITAR HERO LIVE?*

Between GH Live and GHTV there are hundreds of songs available now, **with new songs being added to GHTV continually**.

*Id.* (emphasis added).

55.     Activision had exclusive knowledge of the fact that it might shut down GHTV after the launch of the Products. When Plaintiff and the Class members purchased the Products, they did not know that Activision might shut down GHTV, and Activision did not make that fact reasonably accessible to Plaintiff and the Class members because Activision did not prominently and conspicuously disclose that fact. *See* Exhibit 1.

56.     When Activision initially released the Guitar Hero Live Products, the GHTV service offered around 200 songs.

57.     From the date of release until April 2016, Activision added around six to nine new songs every week to GHTV.

58.     From April 2016 through the end of 2016, Activision added three new songs to GHTV per week.

59.     From 2017 to the present, Activision has added new songs to GHTV only occasionally.

60.     Currently, 484 songs are available via Guitar Hero TV.

61.     The GH Live mode within the Products includes 42 songs that do not require the Internet to use.

62.     Activision has not added any new songs to the GH Live mode.

63.     As Macworld explained in December 2015, just after the launch of all Products, "[w]ith 42 songs, the main Live soundtrack is slimmer than past Guitar Hero entries, *but there's a reason for that: GHTV, the online streaming side of the game*." Andrew Hayward, *Guitar Hero Live for iOS and Apple TV: Almost the full guitar experience, plus something more*, WWW.MACWORLD.COM (Dec. 15, 2015 4:30 PM PST) (emphasis added), https://www.macworld.com/article/3015017/ios/guitar-hero-live-for-ios-and-apple-tv-almost-the-full-guitar-experience-plus-something-more.html. Macworld continued, "GHTV delivers always-on programming as part of the package." *Id.*

64.     The Guitar Hero Live Products do not allow, and have never allowed, players to download the songs available on Guitar Hero TV.

65.     The Guitar Hero Live Products do not provide backward compatibility with previous games or controllers from the Guitar Hero franchise.

66.     The Guitar Hero Live Products also make use of an in-game currency called "Hero Cash."

67.     According to Activision's website:

Hero Cash is *currency that's bought in packs using real world money*.

Hero Cash can be used to bypass the in-game challenges needed to access Premium items, Premium Shows, and Play Tokens.

ACTIVISION PUBL'G, INC., *Guitar hero Live Currency System and In-Game Purchases*, support.Activision.com (2018) (emphasis added), https://support.activision.com/articles/en_US/FAQ/Guitar-Hero-Live-Currency-System-and-In-Game-Purchases/ (click "I see that there are two kinds of currencies in the game. How do I get them and what can they be used to purchase?").

68.     There are some "Premium" and "Exclusive" items within the Guitar Hero Live Products that are only available using Hero Cash. *Id.* (click "Is there any way to get Premium or Exclusive items without using Hero Cash?").

69.     In other words, the Products include features that incentivize the purchase of Hero Cash with real world money.

70.     On June 1, 2018, Activision announced on its website that:

> as of December 1, 2018, the GHTV mode within Guitar Hero Live will no longer be available to play. On that date, we will terminate the service for GHTV and servers will be shut down.

ACTIVISION PUBL'G, INC., *Guitar Hero Live – Guitar Hero Sunset*, SUPPORT.ACTIVISION.COM (2018) ("Guitar Hero Shutdown Announcement"), https://support.activision.com/articles/en_US/FAQ/Guitar-Hero-Live-GHTV-Sunset/?l=en_US&c=Game_Title%3AGuitar_Hero_Live&fs=Search&pn=1.

71.     In the Guitar Hero Shutdown Announcement, Activision continued on to state:

> As of June 1, 2018, iOS versions of the Guitar Hero Live game for mobile will no longer be available for download via the app store. However, if you currently own the app and have it installed on your device, you can continue to play the GH Live mode on your installed device. **Please note:** *if you update your iOS software, the app may no longer be supported.*

*Id.*

72.     Activision further stated as follows on the same web page:

> *1. What will happen to the content I unlocked for accessing Premium Shows?*
>
> Players can still enjoy GHTV and all content in the game mode, including Premium Shows, through November 30, 2018. On December 1, 2018, the servers will be shut down and GHTV mode within Guitar

1    Hero Live will no longer be available to play.

2    *Id.* (click "1. What will happen to the content I unlocked for accessing Premium

3    Shows?").

4        73.     In the Guitar Hero Shutdown Announcement, Activision also stated as

5    follows:

6        *3. I have some unspent Hero Cash. Can I still use it?*

7        Players can continue to use their Hero Cash and items on hand through

8        November 30, 2018. ***Players will no longer be able to use Hero Cash***

9        ***or items as of the GHTV sunset date of December 1, 2018.***

10   *Id.* (emphasis added) (click "3. I have some unspent Hero Cash. Can I still use it?").

11       74.     The December 1, 2018, shutdown will end Plaintiff's and the Class

12   members' access to the 484 playable songs available only through GHTV, which

13   constitute 92% of the playable songs available within the Products. *See* Kyle Orland,

14   *Guitar Hero Live goes offline in December, making 92% of songs unplayable*,

15   ARSTECHNICA.COM      (June      5,     2018     12:27     PM),

16   https://arstechnica.com/gaming/2018/06/guitar-hero-live-goes-offline-in-

17   december-making-92-of-songs-unplayable/.

18       75.     Furthermore, as of June 1, 2018, if Class members who bought the iOS

19   version of the Product buy new iOS devices, those Class members will not be able

20   to re-download the Product, or use the Product at all, on their new iOS devices.

21       76.     Upon information and belief, as of June 1, 2018, if Class members who

22   bought the tvOS version of the Product by new Apple TVs, those Class members

23   will not be able to re-download the Product, or use the Product at all, on their new

24   Apple TVs.

25       77.     Furthermore, as of June 1, 2018, the iOS versions of the Product may

26   be eliminated entirely from consumers' iOS devices if Apple upgrades the iOS

27   operating system.

28       78.     Upon information and belief, as of June 1, 2018, the tvOS version of

1   the Product may be eliminated entirely from consumers' Apple TV devices if Apple
2   upgrades the tvOS operating system.

3       79.    Furthermore, the December 1, 2018, shutdown will end the Class
4   members' access to Premium or Exclusive content, including in particular any and
5   all Premium or Exclusive content that Class members purchased using Hero Cash.

6       80.    Furthermore, the December 1, 2018, shutdown is also likely to deprive
7   Class members of real money that the Class members spent within the Guitar Hero
8   Live Products on Hero Cash.

9   **Activision Harmed Plaintiff in a Manner Identical to the Manner**
10   **in which Activision Harmed the Class Members**

11       81.    On September 22, 2017, Plaintiff purchased a bundled copy of the
12   Guitar Hero Live Product for Apple TV and iOS from the online vendor Tech Union
13   for $22.43. Plaintiff's purchase included both the Guitar Hero Live Product software
14   and the game's guitar-shaped controller, which is only usable with the Product.

15       82.    Consumers rely on representations and information in the marketing of
16   video game products in making decisions to purchase the games.

17       83.    In deciding to purchase the Guitar Hero Live Product, Mr. Fishel relied
18   upon Activision's representations indicating that the Guitar Hero Live Product had
19   a GHTV component, and was enabled for online play, for an indefinite period of
20   time or, at least, a reasonable length of time from the date of release.

21       84.    Similarly, when each Class member purchased a Product, the Class
22   member relied upon Activision's representations indicating that the Products had a
23   GHTV component, and were enabled for online play, for an indefinite period of time
24   or, at least, a reasonable length of time from the date of release.

25       85.    At the time Plaintiff purchased the Guitar Hero Live Product, Plaintiff
26   reasonably expected that Activision would not subsequently eliminate his ability to
27   use the vast majority (currently, 92%) of the Product's playable music tracks.

28       86.    Similarly, at the time each Class member purchased a Product, the Class

member reasonably expected that Activision would not subsequently eliminate the Class member's ability to use the vast majority (currently, 92%) of the Product's playable music tracks.

87.   At the time Plaintiff purchased the Guitar Hero Live Product, Activision had exclusive knowledge that it might subsequently shut down GHTV. However, Activision failed to disclose, or failed to disclose prominently and conspicuously, that Activision would subsequently shut down GHTV.

88.   Similarly, at the time each Class member purchased a Product, Activision had exclusive knowledge that it might subsequently shut down GHTV. However, Activision failed to disclose, or failed to disclose prominently and conspicuously, that Activision would subsequently shut down GHTV.

89.   Had Plaintiff known at the time he purchased the Guitar Hero Live Product that Activision would subsequently shut down the GHTV servers that enable consumers to play the game's online GHTV mode (which has always included the vast majority, and currently includes 92%, of the game's playable music tracks), he would not have purchased the Product or paid the price he paid for the Product.

90.   Similarly, had each Class member known at the time they purchased a Product that Activision would subsequently shut down the GHTV servers that enable consumers to play the game's online GHTV mode (which has always included the vast majority, and currently includes 92%, of the game's playable music tracks), the Class member would not have purchased the Product or paid the price they paid for the Product.

91.   Plaintiff and the Class members reasonably relied to their detriment on Activision's misleading representations and omissions, which indicated that the Products would be usable in their entirety for an indefinite period of time or, at least, a reasonable length of time from the date of release.

92.   Activision's misleading affirmative statements about the GHTV component, and the online play capabilities, of the Guitar Hero Live Products

obscured the material facts that Activision failed to disclose, or failed to disclose prominently and conspicuously, namely, that Activision would subsequently shut down the GHTV servers that made playable the game's online GHTV mode, which has always included the vast majority of the game's playable tracks (currently, 92%).

93.   As an immediate, direct, and proximate result of Defendant's deceptive representations and omissions, Defendant injured Plaintiff and the Class members in that they:

a.   paid a sum of money for Products that were not what Defendant represented;

b.   paid a premium price for Products that were not what Defendant represented;

c.   were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented;

d.   did not receive Products that measured up to their expectations, which Defendant created; and

e.   were denied the benefit of the continuous and ongoing online gameplay that Activision promised.

94.   Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class members would not have been willing to pay the same amount for the Products they purchased, and, consequently, Plaintiff and the Class members would not have been willing to purchase the Products.

95.   Plaintiff and the Class members paid for Products that would provide online gameplay for an indefinite period of time or, at least, for a reasonable length of time from the date of release. However, Plaintiff and the Class members received Products for which online gameplay will be unavailable after December 1, 2018. Furthermore, Plaintiff and the Class members paid for Products that included the GHTV play mode, which has always included the vast majority of the Products'

1  playable music tracks (currently, 92%). However, Plaintiff and the Class members
2  received Products for which the vast majority of the playable music tracks will be
3  eliminated as of December 1, 2018. For all these reasons, the Products Plaintiff and
4  the Class members received were worth less than the Products for which they paid.

5      96.    Based on Activision's misleading and deceptive representations, it was
6  able to, and did, charge a premium price for the Products.

7      97.    Plaintiff and the Class members all paid money for the Products.
8  However, Plaintiff and the Class members did not obtain the full value of the
9  advertised Products due to Defendant's misrepresentations and omissions. Plaintiff
10 and the Class members purchased the Products when they would not have done so
11 had they know the truth about them, or, alternatively Plaintiff and the Class members
12 paid more for the Products than they would have had they known the truth about the
13 Products. Consequently, Plaintiff and the Class members have suffered injury in fact
14 and lost money or property as a result of Defendant's wrongful conduct.

15      **Activision Will Benefit Greatly from Shutting Down Guitar Hero TV**

16      98.    Even though Activision knew it might not allocate resources for the
17 GHTV play mode of the Guitar Hero Live Products indefinitely, Activision engaged
18 in a widespread marketing and advertising campaign to portray the Products as
19 including GHTV indefinitely or, at least, for a reasonable length of time from the
20 date of release. Additionally and/or alternatively, Activision's marketing campaign
21 failed to disclose prominently and conspicuously that the GHTV online play mode
22 would not be available indefinitely or, at least, for a reasonable length of time from
23 the date of release.

24      99.    Activision engaged in this deceptive campaign to charge a premium
25 price for the Guitar Hero Live Products.

26      100.   Activision has a strong motive to shut down Guitar Hero TV. Activision
27 will gain substantial financial benefits from shutting down the Guitar Hero TV
28 service because it will no longer have to incur any expenses to provide Guitar Hero

TV, including the cost of maintaining the Guitar Hero TV online servers 24 hours a day for seven days a week.

101.   Because consumers who purchased the Guitar Hero Live Products will no longer be able to use Guitar Hero TV, which currently provides 92% of the Products' playable tracks and offers the ability to play the game online with other consumers throughout the United States and the world, the injury is substantial.

## CLASS ACTION ALLEGATIONS

102. Pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of himself and a proposed class defined as follows:

> **The Injunctive Relief Class.** All individual consumers who purchased the Products during the period from October 2015 to the date of class certification. Plaintiff asks the Court to adjudicate only liability, declaratory relief, and injunctive relief through the Injunctive Relief Class. The Injunctive Relief Class does not seek any form of monetary relief.

103. Pursuant to Rule 23(a) and (b)(2), Plaintiff brings this action on behalf of himself and a proposed subclass defined as follows:

> **The Vermont Subclass.** All individual consumers who purchased the Products while residing in Vermont during the period from October 2015 to the date of class certification. Plaintiff asks the Court to adjudicate only liability, declaratory relief, and injunctive relief through the Injunctive Relief Class. The Injunctive Relief Class does not seek any form of monetary relief.

104. Together, the Injunctive Relief Class and the Vermont Subclass are the "Class."

105. Excluded from the Class are: (a) Defendant, Defendant's board members, executive-level officers, and attorneys, and immediately family members of any of the foregoing persons; (b) governmental entities; (c) the Court, the Court's immediate family, and the Court staff; and (d) any person that timely and properly excludes himself or herself from the Class in accordance with Court-approved procedures.

106. Plaintiff reserves the right to alter the Class definitions as he deems necessary at any time to the full extent that the Federal Rules of Civil Procedure, the

1  Local Rules of the U.S. District Court for the Central District of California, and
2  applicable precedent allow.

3     107.  Certification of Plaintiff's claims for class-wide treatment is
4  appropriate because Plaintiff can prove the elements of his claims on a class-wide
5  basis using the same evidence as individual Class members would use to prove those
6  elements in individual actions alleging the same claims.

7     108.  Numerosity; Rule 23(a)(1): The size of the Class is so large that joinder
8  of all Class members is impracticable. Due to the nature of Defendant's business,
9  Plaintiff believes there are at least thousands, if not tens or hundreds of thousands,
10 of Class members geographically dispersed throughout the United States.

11    109.  Commonality; Rule 23(a)(2): There are questions of law and fact
12 common to the Class.

13    110.  All Class members are subject to the same actions by Activision that
14 are at the core of this case. All Class members were exposed to Activision's
15 deceptive advertising and marketing representations indicating that the Products
16 included GHTV mode, and offered online play capabilities, for an indefinite period
17 of time or, at least, for a reasonable length of time from the date of its release. At the
18 time all Class members purchased the Products, Activision had exclusive knowledge
19 of the material fact that it might shut down GHTV (which has always included the
20 vast majority of the Products' playable music tracks), and Activision failed to
21 disclose prominently and conspicuously that fact to each Class member. On
22 December 1, 2018, when Activision shuts down the servers that make GHTV
23 available, all Class members will suffer the same substantial injury.

24    111.  Additional common legal and factual questions include but are not
25 limited to:

26         a.   whether Defendant engaged in the course of conduct alleged
27              herein;

28         b.   whether Defendant's conduct at issue is likely to deceive a

reasonable consumer;

    c.    whether Defendant's conduct at issue constitutes an unfair or deceptive act or practice;

    d.    whether Defendant represented to Plaintiff and the Class members that the Products included GHTV, and were playable online, indefinitely or, at least, for a reasonable length of time from the date of the Products' release;

    e.    whether Defendant had a duty to Plaintiff and the Class members to disclose prominently and conspicuously at the point of purchase that it might subsequently shut down GHTV;

    f.    whether the fact that Defendant might shut down GHTV after the Products' launch was material to a reasonable consumer;

    g.    whether Defendant's conduct violates the California and Vermont consumer protection statutes set forth below; and

    h.    whether Plaintiff and the Class members are entitled to injunctive relief.

112.   Defendant engaged in a common course of conduct in contravention of the laws Plaintiff seeks to enforce individually and on behalf of the Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Moreover, the common questions will yield common answers.

113.   <u>Typicality; Rule 23(a)(3)</u>: Plaintiff's claims are typical of the claims of the Class members because there is an imminent threat of future harm to all Class members through Defendant's uniform misconduct described herein; all Class members were subject to Defendant's misleading and unfair advertising and marketing practices, representations, and omissions; and Plaintiff seeks the same relief as the Class members.

114.   Furthermore, there are no defenses available to Defendant that are unique to Plaintiff.

115. <u>Adequacy of Representation; Rule 23(a)(4)</u>: Plaintiff is a fair and adequate representative of the Class because Plaintiff's interests do not conflict with the Class members' interests. Plaintiff will prosecute this action vigorously and is highly motivated to seek redress against Defendant. Furthermore, Plaintiff has selected competent counsel that are experienced in class action and other complex litigation. Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the Class and have the resources to do so.

116. <u>Injunctive or Declaratory Relief; Rule 23(b)(2)</u>: The requirements for maintaining a class action pursuant to Rule 23(b)(2) are met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

117. <u>Notice</u>: Plaintiff and his counsel anticipate that, to the extent notice is necessary in connection with the Rule 23(b)(2) Class that Plaintiff proposes herein, notice to the Class members will be effectuated through recognized, Court-approved notice dissemination methods, which may include United States mail, electronic mail, Internet postings, and/or published notice.

## CLAIMS

## FIRST CLAIM

### Violation of California's Consumers Legal Remedies Act,

### CAL. CIV. CODE § 1750 *et seq.*

### On Behalf of the Class

### Seeking Injunctive Relief Only

118. Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

119. Plaintiff brings this claim on behalf of the Class for violation of California's Consumers Legal Remedies Act, CAL. CIV. CODE § 1750 *et seq.* (the "CLRA").

120.   This claim is for injunctive relief only, pursuant to California Civil Code section 1782(d).

121.   Under the CLRA, "services" means "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods." CAL. CIV. CODE § 1761(b).

122.   The component of Guitar Hero Live that enables online play, GHTV, is a "service" under the CLRA.

123.   Under the CLRA, "consumer" means "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes." *Id.* § 1761(d).

124.   Plaintiff and the Class members are "consumers" under the CLRA.

125.   Under the CLRA, "person" means "an individual, partnership, corporation, limited liability company, association, or other group, however organized." *Id.* § 1761(c).

126.   Defendant is a "person" under the CLRA.

127.   Under the CLRA, "transaction" means "an agreement between a consumer and another person, whether or not the agreement is a contract enforceable by action, and includes the making of, and the performance pursuant to, that agreement." *Id.* § 1761(e).

128.   Defendant, on the one hand, and Plaintiff and the Class members, on the other hand, engaged in "transactions" under the CLRA because, among other reasons, Defendant agreed to sell, and pursuant to that agreement sold, the Products to Plaintiff and the Class members.

129.   Defendant's actions, representations, omissions, and conduct have violated the CLRA because they extend to transactions that are intended to result, or that have resulted, in the sale of goods and services to consumers.

130.   Under California Civil Code section 1770(a):

(a) The following unfair methods of competition and

unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful:

\* \* \* \* \*

(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have . . . .

*Id.* § 1770(a).

131. As detailed above, Defendant has violated California Civil Code section 1770(a)(5) by representing that the Products have characteristics and benefits that they do not have, i.e., Defendant made representations to Plaintiff and the Class members indicating that the Products have a GHTV component, and that the Products are playable online, indefinitely or, at least, for a reasonable length of time from the date of release, when in fact Defendant has now subsequently stated it will shut down the GHTV online service on December 1, 2018.

132. Additionally, or alternatively, Defendant has violated the CLRA by making material omissions. At the time Plaintiff and the Class members purchased the Products, Defendant had a duty to disclose to Plaintiff and the Class members the material fact that Defendant might shut down the GHTV service after the launch of the Products. Defendant had exclusive knowledge of the fact that it might shut down GHTV after the launch of the Products. When Plaintiff and the Class members purchased the Products, they did not know that Defendant might shut down GHTV, and Defendant did not make that fact reasonably accessible to Plaintiff and the Class members because Defendant did not prominently and conspicuously disclose that fact.

133. Defendant stated on June 1, 2018, that it will permanently shut down the GHTV online streaming service within the Products on December 1, 2018.

Defendant's advertising and marketing representations and omissions are, consequently, misleading, untrue, and likely to deceive reasonable consumers.

134. Defendant violated the CLRA by making the representations and omissions in the Product marketing that are detailed above when it knew, or should have known, that its representations and omissions were false and misleading.

135. Plaintiff and the Class members believed Defendant's representations that the Products have a GHTV component, and that the Products are playable online, indefinitely or, at least, for a reasonable length of time from the date of release.

136. Plaintiff and the Class members would not have purchased the Products, but for the misleading representations and/or omissions by Defendant detailed above.

137. The Products Plaintiff and the Class members received were worth less than the Products for which they paid. Plaintiff and the Class members paid a premium price on account of Defendant's misrepresentations and/or omissions detailed herein.

138. Plaintiff and the Class members were injured in fact and lost money as a result of Defendant's representations and/or omissions about the Products detailed above. Plaintiff and the Class members paid for Products that had a GHTV component, and that provided online play, indefinitely or, at least, for a reasonable length of time from the date of release, but did not receive such Products, as Defendant has stated that it will shut down GHTV as of December 1, 2018.

139. Plaintiff, on behalf of the Class members, requests that the Court enjoin Defendant from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to California Civil Code section 1780(a)(2). If the Court does not restrain Defendant from engaging in these practices in the future, Plaintiff and the Class members will be harmed in that they will no longer be able to use the GHTV online streaming service within the Guitar Hero Live Products.

140.   Therefore, Plaintiff prays only for injunctive relief consistent with the relief that the California Supreme Court discussed in *McGill v. Citibank, N.A.*, 393 P.3d 85 (Cal. 2017).

## SECOND CLAIM

### Violation of California's False Advertising Law,

### CAL. BUS. & PROF. CODE § 17500 *et seq.*

### On Behalf of the Class

141.   Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

142.   Plaintiff brings this claim on behalf of the Class for violation of California's False Advertising Law, CAL. BUS. & PROF. CODE § 17500 *et seq.* (the "FAL").

143.   At all relevant times, Defendant has engaged in a public advertising and marketing campaign representing that the Products have a GHTV component, and that the Products are playable online, indefinitely or, at least, for a reasonable length of time from the date of release.

144.   Additionally and/or alternatively, Defendant has violated, and continues to violate, the FAL by making material omissions. At the time Plaintiff and the Class members purchased the Products, Defendant had a duty to disclose to Plaintiff and the Class members the material fact that Defendant might shut down the GHTV service after the launch of the Products. Defendant had exclusive knowledge of the fact that it might shut down GHTV after the launch of the Products. When Plaintiff and the Class members purchased the Products, they did not know that Defendant might shut down GHTV, and Defendant did not make that fact reasonably accessible to Plaintiff and the Class members because Defendant did not prominently and conspicuously disclose that fact.

145.   Defendant stated on June 1, 2018, that it will permanently shut down the GHTV online streaming service within the Products on December 1, 2018.

25

Defendant's advertising and marketing representations and omissions are, consequently, misleading, untrue, and likely to deceive reasonable consumers.

146.   Defendant engaged in its advertising and marketing campaign with intent to directly induce consumers, including Plaintiff and the Class members, to purchase the Products based on Defendant's false and misleading representations and omissions.

147.   In making and disseminating the representations and omissions detailed herein, Defendant knew or should have known that the representations and omissions were untrue or misleading.

148.   Plaintiff and the Class members believed Defendant's representations that the Products have a GHTV component, and that the Products are playable online, indefinitely or, at least, for a reasonable length of time from the date of release.

149.   Plaintiff and the Class members would not have purchased the Products, but for the misleading representations and/or omissions by Defendant detailed above.

150.   The Products Plaintiff and the Class members received were worth less than the Products for which they paid. Plaintiff and the Class members paid a premium price on account of Defendant's misrepresentations and/or omissions detailed herein.

151.   Plaintiff and the Class members were injured in fact and lost money as a result of Defendant's representations and/or omissions about the Products detailed above. Plaintiff and the Class members paid for Products that had a GHTV component, and that provided online play, indefinitely or, at least, for a reasonable length of time from the date of release, but did not receive such Products, as Defendant has stated that it will shut down GHTV as of December 1, 2018.

152.   Plaintiff, on behalf of the Class members, requests that the Court enjoin Defendant from engaging in the false and misleading advertising and marketing set

1  forth herein. If the Court does not restrain Defendant from shutting down the GHTV

2  online streaming service, Plaintiff and the Class members will be harmed in that they

3  will no longer be able to use GHTV.

4      153.   Therefore, Plaintiff prays only for injunctive relief consistent with the

5  relief that the California Supreme Court discussed in *McGill v. Citibank, N.A.*, 393

6  P.3d 85 (Cal. 2017).

7  **THIRD CLAIM**

8  **Violation of California's Unfair Competition Law,**

9  **CAL. BUS. & PROF. CODE § 17200 *et seq.***

10  **Unlawful, Unfair, and Fraudulent Prongs**

11  **On Behalf of the Class**

12      154.   Plaintiff repeats each and every allegation contained in the paragraphs

13  above and incorporates such allegations by reference herein.

14      155.   Plaintiff brings this claim on behalf of the Class for violation of the

15  unlawful, unfair, and fraudulent prongs of California's Unfair Competition Law,

16  CAL. BUS. & PROF. CODE § 17200 *et seq.* (the "UCL").

17      156.   The circumstances giving rise to Plaintiff's and the Class members'

18  allegations include Defendant's corporate policies regarding the sale and marketing

19  of the Products and regarding Defendant's provision of the GHTV online streaming

20  component of the Products.

21      157.   Under the UCL, "unfair competition" means and includes "any

22  unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue

23  or misleading advertising and any act prohibited by" the FAL. CAL. BUS. & PROF.

24  CODE § 17200.

25      158.   By engaging in the acts and practices described herein, Defendant has

26  committed one or more acts of "unfair competition" as the UCL defines the term.

27      159.   Defendant has committed "unlawful" business acts or practices by

28  violating the CLRA and the FAL, as detailed above, and by violating Vermont's

consumer protection statute, as detailed below.

160.   Defendant has committed "unfair" business acts or practices by, among other things:

      a.   engaging in conduct for which the utility of the conduct, if any, is outweighed by the gravity of the consequences to Plaintiff and the members of the Class;

      b.   engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and the members of the Class; and

      c.   engaging in conduct that undermines or violates the spirit or intent of the consumer protection laws that this Class Action Complaint invokes.

161.   Defendant has committed unlawful, unfair, and/or fraudulent business acts or practices by, among other things, engaging in conduct Defendant knew or should have known was likely to and did deceive reasonable consumers, including Plaintiff and the Class members.

162.   As detailed above, Defendant's unlawful, unfair, and/or fraudulent practices include making false and misleading representations and/or omissions.

163.   As detailed above, Defendant has made material representations that the Products have a GHTV component, and that the Products are playable online, indefinitely or, at least, for a reasonable length of time from the date of release.

164.   Additionally and/or alternatively, Defendant has made material omissions. At the time Plaintiff and the Class members purchased the Products, Defendant had a duty to disclose to Plaintiff and the Class members the material fact that Defendant might shut down the GHTV service after the launch of the Products. Defendant had exclusive knowledge of the fact that it might shut down GHTV after the launch of the Products. When Plaintiff and the Class members purchased the Products, they did not know that Defendant might shut down GHTV, and Defendant

did not make that fact reasonably accessible to Plaintiff and the Class members because Defendant did not prominently and conspicuously disclose that fact.

165. Defendant stated on June 1, 2018, that it will permanently shut down the GHTV online streaming service within the Products on December 1, 2018. Defendant's advertising and marketing representations and omissions are, consequently, misleading, untrue, and likely to deceive reasonable consumers.

166. Defendant made the representations and omissions with intent to directly induce consumers, including Plaintiff and the Class members, to purchase the Products based on the false and misleading representations and omissions.

167. Plaintiff and the Class members believed Defendant's representations that the Products have a GHTV component, and that the Products are playable online, indefinitely or, at least, for a reasonable length of time from the date of release.

168. Plaintiff and the Class members would not have purchased the Products, but for the misleading representations and/or omissions by Defendant detailed above.

169. The Products Plaintiff and the Class members received were worth less than the Products for which they paid. Plaintiff and the Class members paid a premium price on account of Defendant's misrepresentations and/or omissions detailed herein.

170. Plaintiff and the Class members were injured in fact and lost money as a result of Defendant's violations of the unlawful, unfair, and/or fraudulent prongs of the UCL that are set out above. Plaintiff and the Class members paid for Products that had a GHTV component, and that provided online play, indefinitely or, at least, for a reasonable length of time from the date of release, but did not receive such Products, as Defendant has stated that it will shut down GHTV as of December 1, 2018.

171. Plaintiff, on behalf of the Class members, requests that the Court enjoin

Defendant from engaging in the violations of the UCL's unlawful, unfair, and fraudulent prongs set out herein. If the Court does not restrain Defendant from shutting down the GHTV online streaming service, Plaintiff and the Class members will be harmed in that they will no longer be able to use GHTV.

172.   Therefore, Plaintiff prays only for injunctive relief consistent with the relief that the California Supreme Court discussed in *McGill v. Citibank, N.A.*, 393 P.3d 85 (Cal. 2017).

### FOURTH CLAIM

**Violation of Vermont's Consumer Protection Act,**

**Vᴛ. Sᴛᴀᴛ. Aɴɴ. tit. 9, § 2451 *et seq.***

**On Behalf of the Vermont Subclass**

173.   Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

174.   Plaintiff brings this claim on behalf of the Vermont Subclass for violation of Vermont's Consumer Protection Act, Vᴛ. Sᴛᴀᴛ. Aɴɴ. tit. 9, § 2451 *et seq.* (the "VCPA").

175.   Under the VCPA, "consumer" means "any person who purchases, leases, contracts for, or otherwise agrees to pay consideration for goods or services not for resale in the ordinary course of his or her trade or business but for his or her use or benefit or the use or benefit of a member of his or her household, or in connection with the operation of his or her household or a farm whether or not the farm is conducted as a trade or business, or a person who purchases, leases, contracts for, or otherwise agrees to pay consideration for goods or services not for resale in the ordinary course of his or her trade or business but for the use or benefit of his or her business or in connection with the operation of his or her business." Vᴛ. Sᴛᴀᴛ. Aɴɴ. tit. 9, § 2451a(a).

176.   Plaintiff and the Class members are "consumers" under the VCPA.

177.   Under the VCPA, "goods" or "services" include "any objects, wares,

goods, commodities, work, labor, intangibles, courses of instruction or training, securities, bonds, debentures, stocks, real estate, or other property or services of any kind." VT. STAT. ANN. tit. 9, § 2451a(b).

178.   The Products are "goods" or "services" under the VCPA.

179.   Under the VCPA, "seller" means "a person regularly and principally engaged in a business of selling goods or services to consumers." VT. STAT. ANN. tit. 9, § 2451a(c).

180.   Defendant is a "seller" under the VCPA.

181.   The VCPA prohibits "[u]nfair methods of competition in commerce and unfair or deceptive acts or practices in commerce." VT. STAT. ANN. tit. 9, § 2453(a).

182.   The VCPA states:

The failure to sell any goods or services in the manner and of the nature advertised or offered, or the refusal or inability to sell any goods or services at the price advertised or offered or in accordance with other terms or conditions of the advertisement or offer, creates a rebuttable presumption of an intent to violate the provisions of this chapter. No actual damage to any person need be alleged or proven for an action to lie under this chapter.

VT. STAT. ANN. tit. 9, § 2457.

183.   To succeed on a claim for violation of the VCPA, a plaintiff must prove: (1) the defendant made a statement, omitted information, or engaged in a practice, that an ordinary person would decide was misleading; (2) the plaintiff reasonably interpreted what the defendant said, failed to say, or did; and (3) the defendant's statement, omission, or practice was "material," meaning it would be likely to affect an ordinary person's decision whether to purchase the relevant goods or services or enter into the relevant contract.

184.   Defendant has engaged in unfair or deceptive acts or practices in

commerce in violation of the VCPA by making material false and misleading representations and/or omissions.

185.   As detailed above, Defendant has made material representations that the Products have a GHTV component, and that the Products are playable online, indefinitely or, at least, for a reasonable length of time from the date of release.

186.   Additionally and/or alternatively, Defendant has made material omissions. At the time Plaintiff and the Class members purchased the Products, Defendant had exclusive knowledge of the fact that it might shut down GHTV after the launch of the Products. When Plaintiff and the Class members purchased the Products, they did not know that Defendant might shut down GHTV, and Defendant did not make that fact reasonably accessible to Plaintiff and the Class members because Defendant did not prominently and conspicuously disclose that fact.

187.   Defendant stated on June 1, 2018, that it will permanently shut down the GHTV online streaming service within the Products on December 1, 2018. Defendant's advertising and marketing representations and omissions are, consequently, misleading, untrue, and likely to deceive reasonable consumers.

188.   Defendant made the representations and omissions with intent to directly induce consumers, including Plaintiff and the Class members, to purchase the Products based on the false and misleading representations and omissions.

189.   Plaintiff and the Class members believed Defendant's representations that the Products have a GHTV component, and that the Products are playable online, indefinitely or, at least, for a reasonable length of time from the date of release.

190.   Plaintiff and the Class members would not have purchased the Products, but for the misleading representations and/or omissions by Defendant detailed above.

191.   The Products Plaintiff and the Class members received were worth less than the Products for which they paid. Plaintiff and the Class members paid a

premium price on account of Defendant's misrepresentations and/or omissions detailed herein.

192.   Plaintiff and the Class members were injured in fact and lost money as a result of Defendant's violations of the VCPA that are set out above. Plaintiff and the Class members paid for Products that had a GHTV component, and that provided online play, indefinitely or, at least, for a reasonable length of time from the date of release, but did not receive such Products, as Defendant has stated that it will shut down GHTV as of December 1, 2018.

193.   Plaintiff, on behalf of the Class members, requests that the Court enjoin Defendant pursuant to section 2461(b), Title Nine, Vermont Statutes, from engaging in the violations of the VCPA set out herein. If the Court does not restrain Defendant from shutting down the GHTV online streaming service, Plaintiff and the Class members will be harmed in that they will no longer be able to use GHTV.

194.   Therefore, Plaintiff prays only for injunctive relief consistent with the relief that the California Supreme Court discussed in *McGill v. Citibank, N.A.*, 393 P.3d 85 (Cal. 2017).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the Class members, respectfully requests that the Court enter an Order:

A.   certifying the proposed Class under Federal Rule of Civil Procedure 23(a) and (b)(2), as set forth above;

B.   declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

C.   declaring that Defendant has committed the violations of law alleged herein;

D.   providing for any and all injunctive relief the Court deems appropriate;

E.   awarding Plaintiff his reasonable costs and expenses of suit, including attorneys' fees;

F.      awarding pre- and post-judgment interest to the extent the law allows; and

G.      providing such further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all claims so triable.

Date: September 18, 2018                    Respectfully submitted,

**REESE LLP**

By:  */s/ Michael R. Reese*
      Michael R. Reese (Cal. State Bar No. 206773)
      *mreese@reesellp.com*
      George V. Granade (Cal. State Bar No. 316050)
      *ggranade@reesellp.com*
      100 West 93rd Street, 16th Floor
      New York, New York  10025
      Telephone: (212) 643-0500
      Facsimile: (212) 253-4272

      Jason P. Sultzer, Esq.
      *sultzerj@thesultzerlawgroup.com*
      **THE SULTZER LAW GROUP P.C.**
      85 Civic Center Plaza, Suite 104
      Poughkeepsie, New York  12601
      Telephone: (845) 483-7100
      Facsimile: (888) 749-7747

      David R. Shoop (Cal. State Bar No. 220576)
      *dshoop@thesultzerlawgroup.com*
      Thomas S. Alch (Cal. State Bar No. 136860)
      *talch@thesultzerlawgroup.com*
      **THE SULTZER LAW GROUP P.C.**
      250 S. Beverly Drive, Suite 330
      Beverly Hills, California 90212
      Telephone:  (866) 884-1717

      *Counsel for Plaintiff Robert Fishel*
      *and the Proposed Class*

EXHIBIT 1











